UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

| RABO AGRIFINANCE LLC | PLAINTIFF |
|---|---|
| v. | CASE #:   5:23CV-55-BJB |
| MCCLAIN FARMS, INC., 7M CATTLE FEEDERS, INC., MCCLAIN FEED YARD, INC., CHELSEA WALTERS MCCLAIN, AS PRESUMED HEIR AND PERSONAL REPRESENTATIVE OF THE ESTATE OF BRIAN MCCLAIN, WILDFOREST CATTLE COMPANY, LLC MAP ENTERPRISES, INC. | DEFENDANTS |
| **VERIFIED COMPLAINT** | |

Plaintiff, Rabo AgriFinance LLC, a Delaware limited liability company ("Rabo" or "Lender"), by and through undersigned counsel, and for its Verified Complaint against Defendants, McClain Farms, Inc., 7M Cattle Feeders, Inc., McClain Feed Yard, Inc., Chelsea Walters McClain, Defendant in her capacity as presumed heir and personal representative of the estate of Brian McClain (the "McClain Defendants"), Wildforest Cattle Company, LLC, and MAP Enterprises, Inc. (collectively, along with the McClain Defendants, the "Defendants") states as follows:

## I.   PARTIES, JURISDICTION & VENUE

1. Plaintiff, Rabo, is a Delaware limited liability company with its principal place of business located at 14767 North Outer 40 Road, Suite 400, Chesterfield, St. Louis County, Missouri 63017.

2. Defendant, McClain Farms, Inc. is a Kentucky corporation with its principal place of

1

business located at 824 Mullins Lane, Benton, Marshall County, Kentucky 42025. It can be served through its sole officer and director Glenn Karlberg at 3300 Triumph Blvd., Suite 100, Lehi, Utah 84043.

3. Defendant, 7M Cattle Feeders, Inc. is a Kentucky corporation with its principal place of business located at 824 Mullins Lane, Benton, Marshall County, Kentucky 42025. It can be served through its sole officer and director Glenn Karlberg at 3300 Triumph Blvd., Suite 100, Lehi, Utah 84043.

4. Defendant, McClain Feed Yard, Inc. is a Texas corporation with its principal place of business located at 824 Mullins Lane, Benton, Marshall County, Kentucky 42025. It can be served through its sole officer and director Glenn Karlberg at 3300 Triumph Blvd., Suite 100, Lehi, Utah 84043.

5. Defendant, Chelsea Walters McClain, in her capacity as presumed heir and personal representative of the estate of Brian McClain, is the widow of Brian McClain, a deceased individual resident of Kentucky. Mrs. McClain can be served with process at 824 Mullins Lane, Benton, Marshall County, Kentucky 42025.

6. Defendant, Wildforest Cattle Company, LLC is a Kentucky limited liability company with its principal place of business located at 1206 Paris Road, Mayfield, Graves County, Kentucky 42066. It can be served through its registered agent Samuel S. Brown at 3430 State Route 45 South, Mayfield, Kentucky 42066.

7. Defendant, MAP Enterprises, Inc., is a Kentucky corporation with its principal place of business located at P.O. Box 1045, Mayfield, Graves County, Kentucky 42066. It can be served through its registered agent Michael Gourley at 100 WK&T Technology Drive, Building 200, Mayfield, Kentucky 42066.

8. This Court has subject matter jurisdiction over the claims asserted by Plaintiff against Defendants in this matter pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds the sum or value of Seventy-five Thousand Dollars ($75,000.00), exclusive of interest and costs, and the parties are citizens of different states. This Court has jurisdiction over the injunctive relief sought in accordance with Fed. R. Civ. P. 64.

9. Defendants are subject to the personal jurisdiction of this Court, because, *inter alia*, Defendants transact business in the State of Kentucky.

10. Venue is proper in this Court pursuant to 28 U.S.C § 1391 because all Defendants reside or maintain place of business in this district and the collateral and personal property that is the subject matter of this Verified Complaint are located in this district.

## II.   FACTS

**The Loans**

**(A) The Loan Documents, Personal Property Collateral, and Real Property Collateral**

1. Rabo and McClain Defendants are parties to those certain loan and security documents evidencing loans made by Rabo to the McClain Defendants. Rabo agreed to make credit facilities available to the McClain Defendants in connection with its livestock, cattle feeder, and cattle production businesses in return for payment by the McClain Defendants under certain terms and conditions.

2. The credit facilities are evidenced by, including but not limited to, that certain (a) *Master Credit Agreement* dated May 11, 2018, by and between McClain Feed Yard, Inc. ("**MFY**") and Rabo, (b) that certain *Joinder*, dated July 15, 2019, by and between 7M Cattle Feeders, Inc. ("**7M**"), MFY, and Rabo, (c) that certain *Joinder*, dated August 27, 2021, by and between Brian Keith McClain ("**B. McClain**"), MFY, 7M and Rabo, (d) that certain *Addendum to Master Credit Agreement*, dated July 24, 2019, by and between MFY, 7M and Rabo, (e) that certain *Addendum*

3

to *Master Credit Agreement*, dated January 13, 2023, by and between McClain Farms, Inc. ("**MFI**"), MFY, 7M, B. McClain and Rabo, True and correct copies of the Master Credit Agreement, Joinders, and Addendum to Master Credit Agreement(s) (collectively, the "**MCA**") are attached hereto as Exhibit A.

3.  Along with the execution of the MCA, the McClain Defendants executed and delivered to Rabo (a) that certain *Real Estate Term Loan 1 Note*, dated May 11, 2018, in the principal amount of $332,500.00, executed by MFY in favor of Rabo, (b) that certain *Real Estate Term Loan 2 Note*, dated July 24, 2019, in the principal amount of $625,000.00, executed by 7M in favor of Rabo, (c) that certain *Real Estate Term Loan 3 Note*, dated August 27, 2021, in the principal amount of $1,019,800.00, executed by B. McClain in favor of Rabo, (d) that certain *Operating Line of Credit 3 Note*, dated January 13, 2023, in the principal amount of $54,000,000.00, executed by MFY, MFI and 7M in favor of Rabo. Each Note was accompanied by those certain *Facility Sheets*, of various dates, by and between MFI, MFY, 7M, B. McClain and/or Crystal D. McClain ("**C. McClain**") in favor of Rabo. True and correct copies of the Real Estate Term Loan Note 1, Real Estate Term Loan Note 2, Real Estate Term Loan Note 3, Operating Line of Credit 3 Note, and accompanying Facility Sheets (collectively, the "**Notes**") are attached hereto as Exhibit B.

4.  To secure repayment of the indebtedness and obligations evidenced under and by the MCA and Notes, MFY, MFI and 7M, each as a Grantor, in favor of Rabo, executed that certain (a) *Master Security Agreement*, dated August 27, 2021, and (b) that certain *Master Security Agreement*, dated July 24, 2019, executed by MFY and 7M, as Grantor, in favor of Rabo.  True and correct copies of the Master Security Agreement(s) (collectively, the "**MSA**") are attached hereto as Exhibit C.

5.  Under and pursuant to the MSA, MFY, MFI and 7M, each as a Grantor, pledged essentially

all of their personal property assets now owned or hereafter acquired, defined as the "*Collateral*" (Exhibit C, MSA, ¶ 1, *The Collateral*), including but not limited to: all accounts, contract rights, documents, documents of title, payment intangibles, investment property, chattel paper, instruments, deposit accounts, inventory, equipment, fixtures, farm products (including crops grown, growing or to be grown and livestock, born or unborn, supplies used in farming operations, and products of crops and livestock), general intangibles, including all Intellectual Property, all proceeds of crop insurance, price support payments, government program payments, rights and interests under Hedging Agreements, and all accessions, attachments, additions to, substitutes or replacements for any Collateral, and all proceeds, products, rents and profits of any Collateral, all rights under warranties and insurance contracts covering the Collateral, and any causes of action relating to the Collateral, and all Books and Records pertaining to any Collateral, including but not limited to any computer-readable memory and any computer hardware or software necessary to process such memory (the "**Personal Property Collateral**") in both Texas and Kentucky to secure the Loan Obligations, as defined below, due and owing to Rabo under the Loan Documents.

6. Rabo perfected its first priority security interest in the Personal Property Collateral by filing UCC-1 Financing Statements ("**UCC-1's**") in Office of the Secretary of State of Kentucky and Office of the Secretary of State of Texas. True and correct copies of the UCC-1's of record with the Kentucky Secretary of State's Office and Texas Secretary of State's Office are attached hereto and incorporated herein as Exhibit D.

7. In connection with the MCA, MSA, and to further secure the repayment of the indebtedness and obligations due and owing to Rabo, Rabo was conveyed a lien on multiple parcels of real property, fixtures, and improvements (the "**Real Property Collateral**") pursuant to that certain *Mortgage, Assignments of Rents, and Security Agreement* (Marshall County, Kentucky) (the

"**Mortgage**") dated August 27, 2021, executed by B. McClain as Grantor, in favor of Rabo, as Mortgagee, recorded in the Marshall County, Kentucky Court Clerk's Office in Deed Book 987, Page 641. A true and correct copy of the Mortgage is attached hereto and incorporated herein as Exhibit E.

8. To further secure the repayment of the indebtedness and obligations due and owing to Rabo under the MCA and Notes and to induce Rabo into making the Loans to the McClain Defendants, B. McClain, C. McClain, MFI, MFY and 7M executed and delivered those certain *Master Loan Guaranty Agreements*, of various dates, in favor of Rabo. True and correct copies of the Master Loan Guaranty Agreements (collectively, the "**MLG**" or "**Master Loan Guaranties**") are attached hereto as Exhibit F.

9. The MCA, Facility Sheets, Notes, MSA, UCC-1's, Mortgage, MLG, and along with all other documents evidencing or securing payment of the indebtedness or obligations due and owing to Rabo by MFY, MFI, 7M, B. McClain, C. McClain, or any of the McClain Defendants, as each may be amended, modified, and/or assigned, are collectively referred to as the "**Loan Documents**" and all of the loans evidenced by the Loan Documents hereinafter referred to as the "**Loans**").

10. Rabo has been and is at the time of the filing of this Verified Complaint the owner and holder of the Loan Documents.

**(B) McClain Defendants' Continued Default Under the Loan Documents & Loan Obligations**

11. Events of Default are defined in the Schedule of Definitions and Covenants (the "**Schedules**"), attached as Exhibit A to the MCA, which are part of the Loan Documents. McClain Defendants are in default under the terms of the Loan Documents, as a result of, among other things: (i) monetary events of default by failing to make payments to Rabo as required under the

Loan Documents, including, but not limited to, the failure to make required payments in order for the aggregate, unpaid principal balance of the Operating Line of Credit 3 Note not exceed $48,000,000.00 on or before April 1, 2023 (Section 1.121(a), "*Non-Payment*"); (ii) providing financial information that is materially incorrect or misleading, making false representations to Rabo (Section 1.121(b), "*False Representation*"); (iii) the failure to comply with various Borrower Covenants contained in the Loan Documents (Section 1.121(c), "*Covenant Violation*"); (iv) the failure to maintain the Personal Property Collateral (or cause the Personal Property Collateral to be maintained) in good condition and repair (Section 1.121(c), "*Collateral Maintenance*"); (v) the failure to comply with the terms and conditions of the Borrowing Base (Section 1.121(a), "*Non-Payment*" & Section 1.121(c), "*Covenant Violation*"); (vi) death of (i) any Borrower or Guarantor who is an individual (Section 1.121(e), "*Death*"); (vii) diligently collect all Collateral, including proceeds thereof, or dispose of any Collateral or proceeds thereof in violation of the terms of the MSA (MSA, ¶ 5, *Grantor Covenants*) (Collectively, the "**Events of Default**").

12. On April 6, 2023, Rabo sent a Notice of Default and Acceleration, and Demand for Payment letter (the "**Default Notice**") to the McClain Defendants, notifying them that, because Defendants were in default under the Loan Documents, Rabo had accelerated and declared the entire amount of the Loan Obligations, as defined under the Loan Documents, immediately due and payable in full. A true and correct copy of the Default Notice is attached hereto as Exhibit G.

13. On or about April 11, 2023, Rabo and McClain Defendants entered into that certain *Amended and Restated Forbearance Agreement* as amended by the *First Amendment to Amended and Restated Forbearance Agreement* dated April 12, 2023, (collectively, the "**Forbearance Agreement**") wherein the McClain Defendants acknowledged the Events of Default, and Rabo agreed to forbear from exercising its rights and remedies under the Loan Documents until and

unless the occurrence of a Forbearance Default. Also, Chelsea Marie McClain confirmed no ownership interest in any of the McClain Defendant entities, asserted no claims in any of the Rabo Collateral, and subordinated any and all rights in and to the Rabo Collateral. A true and correct copy of the Forbearance Agreement is attached hereto as <u>Exhibit H</u>.

14. On April 18, 2023, B. McClain passed away unexpectedly at age 52. On or about April 20, 2023, Rabo discovered that the McClain Defendants has sold, transferred, and disposed no less than 20,000 head of livestock to MAP Enterprises, Inc. ("**MAP**") and Wildforest Cattle Company, LLC ("**WF**") without remitting the proceeds of Rabo's Collateral to Rabo. Both of these events constitute an Event of Default under the Loan Documents and a Forbearance Default under the Forbearance Agreement.

15. As of April 5, 2023, the outstanding indebtedness due and owing to Rabo pursuant to the terms of the Loan Documents, exclusive of attorneys' fees/professional fees and costs, default interest, and other charges as allowed under the Loan Documents (the "**Loan Obligations**") totals no less than the following amounts:

| Obligation No. 22122952/22122953 (Operating Line of Credit 3) ||
|---|---|
| Principal | $50,628,072.06 |
| Interest | $717,599.12 |
| **Total** | **$51,345,671.18** |

| Obligation No. 22114181 (Real Estate Term Loan 1) ||
|---|---|
| Principal | $187,759.63 |
| Interest | $107.77 |
| **Total** | **$184,867.40** |

| Obligation No. 22117432 (Real Estate Term Loan 2) ||
|---|---|
| Principal | $179,379.62 |
| Interest | $96.67 |
| **Total** | **$179,476.29** |

| Obligation No. 22122951/0000030687 (Real Estate Term Loan 3) ||
|---|---|
| Principal | $898,314.80 |
| Interest | $405.24 |

| Total | $898,720.04 |
|---|---|

16. Additionally, Rabo is owed further contractual and default interest thereafter at the rates set forth in the Loan Documents, both before and after judgment, until paid, together with costs and attorneys' fees incurred by Rabo in enforcement or collection of the Loan Obligations secured by Rabo's Personal Property Collateral and Real Property Collateral.

17. The initial Events of Default remain outstanding. McClain Defendants have failed to cure the Events of Default, as required by the Loan Documents, and the Loan Obligations remain unpaid despite being due and owing in full. Additional Events of Default have also occurred which also constitute a Forbearance Default.

18. Rabo holds all of the right, title, and interest in and to the Loan Documents. Rabo has performed all conditions precedent required of it pursuant to the Loan Documents.

19. Rabo holds a valid, properly perfected, and first priority security interest in and lien secured by the Personal Property Collateral, including, but not limited to, all of the "Livestock" in the possession of the McClain Defendants and all proceeds from the unauthorized sell, transfer and disposition of the Personal Property Collateral and Livestock.

20. It appears that Rabo's Personal Property Collateral, including and specifically the Livestock and proceeds thereof, has been and remains in imminent danger of being removed, sold, encumbered, disposed, or otherwise impaired, in violation of Rabo's rights under the Loan Documents.

21. Rabo has the right to immediate possession of all of its Personal Property Collateral and any proceeds thereof upon the occurrence of an Event of Default.

22. Specifically, the MSA provides, in relevant part, that: Upon the occurrence of an Event of Default, Collateral Agent [Rabo] may: (g) enter upon the property where any Collateral, including

Books and Records, are located and take possession of such Collateral and such Books and Records, and use such property (including buildings and facilities) and any of Grantor's equipment … in order to take possession of, hold, preserve, process, assemble, prepare for sale or lease, market for sale or lease, sell or lease or otherwise dispose of, any Collateral. *See* Exhibit C, Master Security Agreement, *Remedies*, at ¶8(g).

23. The MSA also provides, in relevant part, that: Upon the occurrence of an Event of Default, Collateral Agent [Rabo] may: (k) have a receiver appointed by any court of competent jurisdiction to take possession of the Collateral which the McClain Defendants expressly consent to such an appointment and agree not to oppose any such appointment. *See* Exhibit C, Master Security Agreement, *Remedies*, at ¶8(k).

24. The McClain Defendants have sold, disposed, and transferred Personal Property Collateral including Livestock to MAP and WF and failed to remit the proceeds thereof to Rabo.

25. Rabo is informed and believes that the value of the Livestock and proceeds thereof that were sold, transferred and conveyed to MAP and WF totals no less than $20,000,000.

26. At the time the McClain Defendants sold the Livestock to MAP and WF, Rabo's security interest in the Livestock and proceeds thereof were of public record; therefore, the McClain Defendants, MAP, and WF knew or should have known of Rabo's security interest.

27. Rabo's security interest in the Livestock and proceeds of the Livestock under the MSA were at all times hereto perfected security interests of public record.

28. The proceeds from the sale of Livestock constituting Rabo's Personal Property Collateral are easily removed by MAP and WF. Both MAP and WF appear to be entities with no actual physical business locations or ongoing business operations rendering them unlikely to be forthcoming to answer the final judgment of the Court respecting the same.

29. It is likely that Rabo will obtain a final judgment against the McClain Defendants, MAP, and WF entitling Rabo to a judgment for the wrongful conversion of Rabo's Personal Property Collateral against MAP and WF as third party transferees and the McClain Defendants as Rabo's secured party debtor; however, if the McClain Defendants, MAP, and WF are not restrained from disposing of the proceeds of the collateral, Rabo's secured position will be completely eroded such that Rabo will be irreparably harmed.

30. Rabo, therefore, believes that there is an immediate danger that the proceeds from the sale of Livestock may become unavailable to levy by reason of the proceeds being further transferred, concealed, converted, wasted or otherwise transferred from the jurisdiction of this Court.

31. The McClain Defendants, MAP, and WF should be immediately restrained from dissipating, absconding with, selling or transferring any Personal Property Collateral, Livestock, or proceeds thereof in any manner pending entry of a final order entered by this Court.

## COUNT I
## BREACH OF CONTRACT

32. Rabo hereby realleges and incorporates its allegations contained in paragraphs 1 through 31 of the Verified Complaint as if fully set forth herein.

33. The Loan Documents are valid and enforceable contracts between Rabo and McClain Defendants.

34. McClain Defendants materially breached their obligations under the Loan Documents as evidenced by the Events of Default.

35. McClain Defendants' failure to timely pay the Loan Obligations due and owing to Rabo under the Loan Documents constitutes an Event of Default.

36. The Loan Obligations are currently due and owing to Rabo and have not been paid by McClain Defendants.

37. As a direct and proximate result of the Events of Default and Defendants failure to cure the Events of Default, Rabo has suffered damages in an amount no less than the Loan Obligations, plus professional fees, costs, and expenses, which are recoverable pursuant to the Loan Documents.

38. Pursuant to the terms of the Loan Documents McClain Defendants are indebted to Rabo for the entire amount of the Loan Obligations plus reasonable attorney's fees, costs, and expenses.

39. Accordingly, Rabo demands judgment against McClain Defendants, both jointly and severally, for breach of contract under the Loan Documents in an amount not less than the entire amount of the Loan Obligations together with all accruing interest and costs, including without limitation, default interest, attorneys' fees, and all expenses incurred by Plaintiff in collecting the Loan Obligations.

## COUNT II
### BREACH OF SECURITY AGREEMENT & MORTGAGE – APPOINTMENT OF RECEIVER

40. Rabo hereby realleges and incorporates its allegations contained in paragraphs 1 through 39 of the Verified Complaint as if fully set forth herein.

41. The McClain Defendants executed the MSA conveying Rabo a security interest in all Personal Property Collateral as more fully described in the MSA.

42. Upon information and belief, the Personal Property Collateral in the possession, custody, or control of the McClain Defendants, MAP Enterprises, Inc. Wildforest Cattle Company, LLC, and other known and unknown third parties.

43. The MSA also provides, in relevant part, that: Upon the occurrence of an Event of Default, Collateral Agent [Rabo] may: (k) have a receiver appointed by any court of competent jurisdiction to take possession of the Collateral which the Grantor [McClain Defendants] expressly consent to

such an appointment and agree not to oppose any such appointment. *See* <u>Exhibit C</u>, Master Security Agreement, *Remedies*, at ¶8(k).

44. Pursuant to the Mortgage, after an Event of Default, Rabo may (c) make an *ex parte* application to any court of competent jurisdiction and obtain appointment of, a receiver … without notice; and (d) in person, by agent, or by court-appointed receiver, enter, take possession of, manage and operate all or any part of the Property. *See* <u>Exhibit E</u>, Mortgage, Remedies, at ¶ 21 (c) & (d).

45. Pursuant to KRS § 425.600, Fed. R. Civ. P. 66 and/or the terms of the MSA and Mortgage, Rabo hereby seeks the appointment of a receiver for the Personal Property Collateral and Real Property Collateral.

## COUNT III
## CONVERSION

46. Rabo hereby realleges and incorporates its allegations contained in paragraphs 1 through 45 of the Verified Complaint as if fully set forth herein.

47. The McClain Defendants executed the MSA conveying Rabo a security interest in all Personal Property Collateral, including the Livestock and proceeds thereof.

48. Rabo's security interest in all of the McClain Defendants' Personal Property Collateral, including the Livestock and proceeds thereof, were at all times relevant hereto a perfected security interest of public record. The McClain Defendants, MAP, and WF knew or should have known of Rabo's security interest.

49. In violation of the MSA and Loan Documents, the McClain Defendants sold, transferred, and disposed of Rabo's Personal Property Collateral and Livestock to MAP and WF without remitting the proceeds from the sale, disposition and transfer of said collateral to Rabo.

50. Rabo's security interest in the Personal Property Collateral, Livestock, and proceeds

thereof is superior to any interest acquired by MAP or WF, and said security interest continues notwithstanding the sale, transfer or disposition of the Personal Property Collateral and Livestock as Rabo did not authorize the disposition of its collateral free and of Rabo's security interest.

51. The McClain Defendants, MAP and WF's wrongful conversion of the Personal Property Collateral, Livestock, and proceeds thereof deprived Rabo of the collateral that secures the Loan Obligations as set forth in the Loan Documents.

52. As set forth herein, Rabo is the owner and holder of a first priority security interest in the Personal Property Collateral, Livestock, and proceeds thereof.

53. Accordingly, Rabo demands judgment against McClain Defendants, MAP, and WF, both jointly and severally, in an amount equal to the greater of: the fair market value of the Livestock when the unauthorized transactions at issue took place, the $[X] sale price of the Livestock between McClain Defendants and MAP and between McClain Defendants and WF, the sale price and/or any compensation received by McClain Defendants from MAP, WF, or others for the selling, processing, or otherwise disposing of the Livestock, and the sale price and/or any other value received by MAP or WF (or any subsequent transferee of both MAP and WF) upon said party's use, selling, processing, transfer, and/or otherwise disposing of the Livestock.

## COUNT IV
### REPLEVIN

54. Rabo hereby realleges and incorporates its allegations contained in paragraphs 1 through 53 of the Verified Complaint as if fully set forth herein.

55. At all times MAP and WF purchased the Livestock from the McClain Defendants, Rabo held and still holds valid, properly perfected, and first priority liens on and security interests in the Livestock and proceeds thereof pursuant to the MSA, UCC-1's of public record, so MAP and WF knew or should have known of Rabo's security interest in the Livestock.

56. Rabo's perfected security interest was first, prior, and superior to any interest that MAP or WF acquired by purchasing the Livestock from the McClain Defendants.

57. Pursuant to KRS 355.9-315, Rabo's security interest in the Livestock continues in the Livestock, and in any identifiable proceeds in the said collateral from the use, sale, processing, transfer and/or other disposition by MAP or WF.

58. As set forth herein, Rabo is the owner and holder of a first, priority perfected security interest in the Livestock continues in the Livestock, and in any identifiable proceeds of the Livestock.

59. Accordingly, Rabo requests that it be awarded immediate possession of the Livestock or any proceeds of the Livestock that are in the possession of MAP and WF as well as recover from MAP and WF jointly and severally the diminished value of the Livestock measured by the difference in value between the fair market value of the Livestock at the time when the unauthorized transactions at issue took place and the value of the Livestock or any proceeds from the Livestock ultimately delivered to Rabo.

## COUNT V
**TEMPORARY AND PERMANENT INJUNCTIVE RELIEF**

60. Rabo hereby realleges and incorporates its allegations contained in paragraphs 1 through 59 of the Verified Complaint as if fully set forth herein.

61. Events of Default have occurred under the Loan Documents which remain outstanding and uncured.

62. The MSA provides in relevant part that upon an Event of Default, Rabo shall have full power to enter upon the property of McClain Defendants to take possession of and remove the Personal Property Collateral, including Livestock and proceeds thereof.  The Mortgage provides

that after an Event of Default, Rabo may in person, by agent, or by court-appointed receiver, enter, take possession of, manage and operate all or any part of the Property.

63. Injunctive relief is warranted here and is necessary to ensure that the Personal Property Collateral is secured and is not subject to further dissipation, transfer, and waste.

64. The Personal Property Collateral, including Livestock and proceeds thereof are easily removed, relocated and subject to concealment, waste, conversion, conveyance, or removal by McClain Defendants to MAP, WF, other third parties or undisclosed locations.

65. Rabo has established substantive claims which have a strong likelihood of success on the merits as the Events of Default are not in dispute, the McClain Defendants have breached the terms of the Loan Documents, and Personal Property Collateral has not been accounted for, remains missing, or in the hands of various third parties.

66. Rabo has clearly ascertainable rights in the Personal Property Collateral in need of protection from further dissipation. Without preliminary relief, Rabo will be without adequate remedy at law to protect its current and future property rights from additional harm by the McClain Defendants and third parties.

67. Rabo will suffer immediate and irreparable harm if McClain Defendants, MAP, or WF sell, convey, convert, conceal, waste, or otherwise transfer Personal Property Collateral, Livestock and proceeds thereof from the jurisdiction of this Court. Injunctive relief is in the public interest, as public policy favors the enforcement of property rights and the protection of legitimate interests of secured creditors, like Rabo.

68. McClain Defendants, MAP, and WF should be restrained from dissipating, absconding with, selling or transferring the Personal Property Collateral, Livestock or proceeds thereof in any manner pending issuance of an order by this Court.

69. Accordingly, Rabo requests that, pending the issuance of further injunctive relief, that this Court issue a Temporary Restraining Order prohibiting McClain Defendants, MAP, WF or anyone acting on behalf of, in concert with or under the control of the McClain Defendants, MAP, or WF from transferring any interest in the Personal Property Collateral, Livestock or proceeds thereof, by sale, transfer, pledge, or otherwise disposing of the Livestock and proceeds thereof, concealing or otherwise removing the Personal Property Collateral, Livestock and proceeds thereof to make it less available for seizure by the levying officer or recovery by a receiver or by Rabo.

70. Upon notice and opportunity for hearing, Rabo requests that is Court issue a permanent injunction in order to preserve the Personal Property Collateral, Real Property Collateral, claims and interests of parties in interest in the action.

## COUNT VI
## VOIDABLE CONVEYANCE

71. Rabo hereby realleges and incorporates its allegations contained in paragraphs 1 through 70 of the Verified Complaint, as if fully set forth herein.

72. Rabo is a present creditor of the McClain Defendants and has been since May 11, 2018.

73. Instead of complying with the Grantor Covenants which required the McClain Defendants to sell Livestock in the ordinary course of business and remit the proceeds from the sale of said Livestock to Rabo in order to remain compliance with the Operating Line of Credit 3 Borrowing Base, McClain Defendants sold, transferred, and disposed of Livestock and proceeds thereof for other purposes, including without limitation, to pay other creditors or "investors" whose interest in the Livestock were inferior to Rabo's first priority security interest or non-existent.

74. As a result of the forgoing, the McClain Defendants have sold and transferred Livestock, and the proceeds of the same that were subject to Rabo's priority, perfected security interest, with actual intent to hinder, delay, and defraud Rabo.

75. The McClain Defendants were insolvent at the time the Livestock were sold and transferred.

76. Rabo is entitled to an avoidance of the transfers and any and all other rights afforded by Kentucky's Uniform Voidable Transactions Act as set forth in KRS Chapter 378A.

77. Rabo expressly reserves the right to join any and all other unknown transferees as they may be identified in the course of this proceeding.

## COUNT VII
## BREACH OF MASTER LOAN GUARANTIES

78. Rabo hereby realleges and incorporates its allegations contained in paragraphs 1 through 77 of the Verified Complaint, as if fully set forth herein.

79. B. McClain, MFI, MFY and 7M, as Guarantors, executed the MLG's wherein each as a Guarantor absolutely, unconditionally, and irrevocably guaranteed the full and prompt payment when due of the Guaranteed Obligations, as defined in the MLG's.

80. Rabo owns and is entitled to enforce the MLG's.

81. The Events of Default and subsequent failure to pay the Loan Obligations constitutes an Event of Default and breach of the MCA and Loan Documents by Defendants, and an Event of Default and breach of the MLG's by the Guarantors.

82. As a result of the Event of Default and breach of the MLG's, Rabo has been damaged in the amount of the Guaranteed Obligations, as defined in the MLG's.

83. Also as a result of the Events of Default and breach of the MLG's, it was necessary for Rabo to retain counsel to file this action, for which Rabo has incurred costs and attorneys' fees, as well as other expenses related to securing payment of the Loan Obligations. The Guarantors have agreed and are obligated to pay these fees and costs under the terms of the MLG's.

84. Accordingly, Rabo demands judgment against the Guarantors, both jointly and severally,

for breach of contract under the MLG's in the entire amount of the Guaranteed Obligations as defined in the MLG's.

**DEMAND FOR RELIEF**

WHEREFORE, Plaintiff, Rabo AgriFinance LLC, respectfully requests that the Court:

1. Enter a monetary judgment in favor of Rabo against the McClain Defendants, both jointly and severally, in the entire amount of the indebtedness due and owing, plus accruing interest, professional fees, costs, and expenses in an amount to be established, but in no event less than the amount of the Loan Obligations;

2. That the Court, on Rabo's motion, appoint a receiver to take charge of the Real Property Collateral, Personal Property Collateral, Livestock, and proceeds thereof during the pendency of this action, to maintain and secure all of the collateral, prevent further dissipation of the Real Property Collateral, Personal Property Collateral, Livestock, and proceeds thereof, and generally do such acts respecting the Collateral and personal property, and proceeds thereof as this Court may authorize;

3. Enter a Temporary Restraining Order and, and after notice and opportunity for hearing, permanent injunctive relief which said order be issued restraining the McClain Defendants, MAP, WF, and third parties from dissipating, absconding with, selling or transferring the Personal Property Collateral, Livestock, or proceeds thereof in any manner pending entry of further order by this Court;

4. Enter a monetary judgment in favor of Rabo against McClain Defendants, MAP, and WF, both jointly and severally, damages in an amount to be determined at trial for wrongful conversion of Rabo's Personal Property Collateral, Livestock, and proceeds thereof;

5. Grant and award Rabo immediate possession of the Personal Property Collateral,

Livestock, and Proceeds thereof that are in possession of the McClain Defendants, MAP, and WF, as well as recover from the McClain Defendants, MAP, and WF, jointly and severally, damages in the amount to be determined at trial;

6. Enter an order declaring and confirming that Rabo's security interest in the Personal Property, Livestock and proceeds thereof are a first priority security interest superior and entitled to priority over any other interest, and any voidable conveyance of the Personal Property, Livestock and proceeds thereof be declared void, *ab initio*, and judgment be entered against any transferee for the amounts received, along with interest at the applicable interest rate permitted by law;

7. Enter a monetary judgment in favor of Rabo against the Guarantors, both jointly and severally, in the entire amount of the Guaranteed Obligations; and

8. Grant Rabo any and all legal and equitable relief to which Rabo may be, and may become, or may appear to be entitled in this action.

    Respectfully submitted,

    BAKER, DONELSON, BEARMAN,
    CALDWELL & BERKOWITZ, P.C.

    */s/ Joy Boyd Longnecker*
    Joy Boyd Longnecker, KY BPR No. 97151
    1600 West End Avenue, Suite 2000
    Nashville, Tennessee 37203
    Tel: (615) 726-5600
    jlongnecker@bakerdonelson.com
    R. Spencer Clift, III, TN BPR #: 020445 (*Pro Hac Vice Pending*)
    Suite 2000, 165 Madison Avenue
    Memphis, Tennessee 38103
    Email: sclift@bakerdonelson.com
    Tel: (901) 526-2000
    **Attorneys for Rabo AgriFinance LLC**